In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-21-00283-CV

IN THE INTEREST OF C.S.

On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-238,543

## MEMORANDUM OPINION

Mother appealed from an order terminating her parental rights to her daughters, Casey and Mary.[1] In her appeal, Mother argues that the evidence presented to the trial court was legally and factually insufficient to support the trial court's findings terminating her parental relationship with Casey and Mary, including the trial court's best-interest finding.[2] Based on our review of Mother's

---

[1] We use pseudonyms for the names of the minors and those of their family members to protect the minors' identities. Tex. R. App. P. 9.8(b)(2) (allowing courts to protect the identities of minors in parental-rights termination cases).

[2] The trial court terminated Mother's rights on three predicate grounds, including condition endangerment and conduct endangerment. *See* Tex. Fam. Code

1

arguments, we conclude that the record contains sufficient evidence to support the trial court's findings as to endangerment and the children's best interest; for those reasons, we will affirm.

## I. Background

### A. Pre-Removal Events and Initiation of Suit

Prior to filing suit Casey, then two and one-half years old, was found alone, outside, at Mother's apartment complex. This event triggered an investigation into Mother's apparent neglectful supervision of Casey, and Mother consequently agreed to Casey's voluntary placement with M.A., Mother's cousin. The following month, four-month-old Mary was determined to have been exposed to both marijuana and cocaine, and she, also, was placed with a maternal relative.[3]

Mother eventually took a drug test and tested positive for both marijuana and methamphetamines; although Mother acknowledged her marijuana use, she denied

---

Ann. § 161.001(b)(1)(D) and (E). The trial court further found that Mother had and continues to have a mental or emotional illness or a mental deficiency rendering her unable to provide for the needs of the children; this illness or deficiency was found likely to continue to prevent Mother from providing for the children's needs until the children reached adulthood. *See* Tex. Fam. Code. Ann. § 161.003(a)(1), (2). The parental rights of Casey's father and Mary's father were also terminated, but neither of them appealed the termination order.

[3] Evidence also revealed that Mary had tested positive for marijuana when she was born, indicating that Mother used and/or was exposed to marijuana while she was pregnant with Mary.

using either methamphetamines or cocaine, and therefore could not comprehend or explain the positive results for these substances in her and Mary's drug tests.

Despite having agreed to permit the children to remain in their then current placement locations, three and one-half weeks later, Mother took the children, ostensibly because she inaccurately believed that the case was closed and that she was permitted to do so. This event resulted in the Texas Department of Family and Protective Services ("the Department") initiating this suit on December 29, 2020, with the goal of reuniting the family, or in the alternative, of terminating Mother's parental rights. As a result, the trial court issued a Writ of Attachment to regain physical custody of the children. The removal affidavit attached to the Department's petition referenced these previous incidents and others that reflected poorly on Mother's fitness as a parent, and therefore sought Temporary Managing Conservatorship of both children.

In March of 2021, after the Department learned that Mother's parental rights to another child, David, had been previously terminated, it sought and was granted a determination of aggravated circumstances.[4] This determination enabled the

---

[4] The appellate record contains extensive information about David and the circumstances of his removal from Mother's care, but that information appears to have only minimal relevance to the matter currently before us, and therefore will not be discussed further.

Department to accelerate the pace of the suit while discontinuing payment for services that Mother otherwise would have received pursuant to her service plan.

After several continuances and changes of Mother's legal representation, the trial court remotely conducted a trial on September 7, 2021. As a result of the evidence at that trial, the trial court issued an Interlocutory Order of Termination, and signed an Order of Termination on December 10, 2021.

## B. Evidence at Trial

### 1. Testimony of Caseworker Kenya Holder-McCurley

Kenya Holder-McCurley, Child Protective Caseworker, described the reasons that Casey and Mary were removed from Mother's care, as set forth above. Following the children's removal, the matter was transferred to Family Based Safety Services, and Mother was directed to follow all recommendations, including completing a twelve-week parenting class and a substance-abuse assessment, maintaining her mental health, and submitting to random drug screens. Despite the requirement that she remain drug free, Mother continued to test positive for marijuana. In Holder-McCurley's opinion, Mother was making only a token effort to comply with her service plan, and it was in the children's best interest that Mother's parental rights be terminated.

## 2. Testimony of M.A.

M.A., Mother's cousin and Casey's caregiver, testified that Casey had thrived during the seventeen months that Casey had resided with her, and she planned to adopt Casey if Mother's parental rights were terminated.

Having known Mother since childhood, M.A. was familiar with Mother's mental health struggles, specifically depression, and with Mother's misuse of her prescription psychotropic medication, which interfered with Mother's ability to optimally parent her children.

M.A. also described her interactions with Mother regarding the particular events giving rise to this case and recalled that at the time of Casey's venture outside the apartment, Mother stated that she (Mother) had gone to the store and had left Casey with a person who did not watch Casey closely, resulting in the child leaving the apartment on her own. As for the events of late December of 2020, when Mother took the children from their grandfather's residence, M.A. stated that Mother "sped off" with the children. M.A. followed Mother's vehicle, but Mother drove "very, very fast," and was "weaving in and out of traffic[,]" in a clear attempt to prevent M.A. from following her and learning where Mother was taking the children. M.A. considered this situation dangerous for the children, noting that Mother's erratic driving nearly resulted in an accident.

### 3. Testimony of Mother

Contrary to M.A.'s testimony, Mother testified that Casey got out of the apartment while she (Mother) was taking a nap. She further testified that she took the children in late December of 2020 because she erroneously believed that the case was closed and that she was authorized to do so. She acknowledged her evasive driving maneuvers but testified that her actions were justified because M.A. had no reason to keep the children from their own mother. She denied having been under the influence of marijuana at the time Casey got out of the apartment but did not specify whether she had or had not been using illicit drugs at the time she took the children in violation of their agreed placements.

As for the requirement that she complete a parenting class, an element of her service plan, Mother testified that the teacher stopped teaching her initial twelve-week class after only six weeks. Mother, herself, made the decision to discontinue attending her subsequently assigned parenting class because she disagreed with the teacher's approach to the subject. Mother testified that she has faithfully attended AA/NA meetings, as required, and has obtained the necessary evidence of attendance, but it appears that that evidence was never provided to either the Department or the trial court. Mother has not, however, obtained a sponsor because she does not consider herself an addict. Mother also pointed to her two negative drug tests from February and March of 2021 and explained that her previous tests were

6

positive because the marijuana she had used was working its way out of her system. Mother attempted to explain her inconsistent medication use by stating that she was working with her doctor to identify the medication that worked best for her but did not explain why she sometimes took too much of her prescribed medication, as M.A. testified.

She further testified that she loved her children and did not want the court to terminate her parental rights.

## II. Standard of Review

The decision to terminate parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more predicate acts or omissions and that termination is in the child's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.L.*, 163 S.W.3d at 84.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.O.A.,* 283 S.W.3d 336, 344-45 (Tex.

7

2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id*. (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### III. Analysis

**A. Statutory Grounds D and E**

In her first two issues, Mother challenges the sufficiency of the evidence to support termination of her parental rights under sections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E). As to these subsections, Mother argues that the evidence is legally and factually insufficient because the evidence did not show that the children were harmed or endangered by either their living conditions or by Mother's course of conduct. In her

8

fourth point of error, Mother contends that the evidence was legally and factually insufficient to support the trial court's finding that it was in the children's best interest to terminate her parental rights.

We are required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged. *See In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). If the evidence is sufficient as to one of these, it will not be necessary to address the other predicate grounds because sufficient evidence as to only one ground in addition to the best interest finding is all that is necessary to affirm a termination judgment. *See id.* at 232-33. Because the evidence of statutory grounds D and E is often interrelated, we may consolidate our review of the evidence supporting these grounds. *See In re J.L.V.,* No. 09-19-00316-CV, 2020 WL 1161098, at *10 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.). Endangerment arises when a parent's conduct jeopardizes the child's emotional or physical health or to expose a child to loss or injury. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Under subsection D, parental rights may be terminated if clear and convincing evidence supports the conclusion that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Subsection E allows for termination of parental rights if clear and

convincing evidence supports the conclusion that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id*. § 161.001(b)(1)(E).

Under subsection D, parental rights may be terminated based on a single act or omission by the parent. *In re L.E.S.,* 471 S.W.3d 915, 925 (Tex. App.—Texarkana 2015, no pet.) (*citing In re A.B*., 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied)). Under that subsection, we examine the time before the children's removal to determine whether the environment of the home posed a danger to the children's physical or emotional well-being. *Id.* at 925 (citing *In re L.C*., 145 S.W.3d 790, 795 (Tex. App.— Texarkana 2004, no pet.)). "A finding of endangerment under subsection E, however, may be based on conduct both before and after removal." *In re A.L.H.,* 515 S.W.3d 60, 93 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *In re S.R.,* 452 S.W.3d at 360). "'[E]ndanger' means to expose to loss or injury[.]'" *In re N.S.G*., 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Under subsection E, it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *Boyd,* 727 S.W.2d at 533; *In re N.S.G*., 235 S.W.3d at 367. "'A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards.'" *In re L.E.S*., 471 S.W.3d at 925 (quoting *In re N.B*., No. 06-12-00007- CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May

10

8, 2012, no pet.) (mem. op.)). Generally, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

In addition, a pattern of drug abuse will support a finding of conduct endangering a child even if there is no evidence that such drug use caused a physical or actual injury to the child. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A history of illegal drug use is conduct that subjects a child to a life that is uncertain and unstable, endangering the child's physical and emotional well-being. *See In re S.D.,* 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). A parent's drug use, criminal history, and employment and housing instability prior to and during the case create a course of conduct from which the factfinder could determine the parent endangered the child's emotional and physical well-being. *See In re M.C.*, No. 09-18-00436-CV, 2019 WL 1561824, at *6 (Tex. App.—Beaumont Apr. 11, 2019, no pet.) (mem. op.); *see also In re S.R.*, 452 S.W.3d at 361-62 (parent's drug use may qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination under subsection E

11

because "it exposes the child to the possibility that the parent may be impaired or imprisoned[ ]"). A parent's continued drug use when the custody of her child is in jeopardy supports a finding of endangerment. *See In re S.R.,* 452 S.W.3d at 361-62 (citing *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

The trial court, sitting without a jury, heard evidence of Mother's relatively recent illicit drug use, both before and after the children were removed. Additional evidence before the trial court indicated that Casey had tested positive for marijuana exposure, and Mary had tested positive for marijuana shortly after her birth; also, Mary later tested positive for both marijuana and cocaine. Mother admitted to marijuana use only and stated that she did not use cocaine. Even assuming, for the purposes of this case, that this statement is accurate, Mother's testimony that she used marijuana is evidence that both Casey and Mary were exposed to marijuana, an illegal drug, while they were in Mother's care. Because the applicable case law referenced above supports the proposition that Mother's ongoing drug use endangered her children, regardless of whether the children sustained actual harm, and because the record contains clear and convincing evidence of Mother's drug use while her children's custody was in jeopardy, we will not disturb the trial court's well-supported conclusion that the children were endangered by their living

12

environment that exposed them to marijuana and by Mother's voluntary, deliberate, conscious course of conduct in her use of marijuana.

Although Mother testified that she was drug free at the time of trial, a statement that finds some support in the two negative drug tests performed earlier that year, such recent improvements in Mother's lifestyle do not "'conclusively negate the probative value of a long history of drug use and irresponsible choices.'" *In re J.F.-G.*, 627 S.W.3d 304, 316-17 (Tex. 2021) (quoting *In re J.O.A.*, 283 at 346. Mother's attempt to characterize her drug use as having occurred in the "distant past," and to invoke the logic of our sister court in *Wetzel v. Wetzel,* to urge reversal of the trial court's decision misapplies *Wetzel* to the facts before us. 715 S.W.2d 387 (Tex. App.—Dallas 1986, no writ). The *Wetzel* court observed that the parental misconduct in question took place four years prior to the termination proceeding and appeared unlikely to recur. *Id.* at 390. Under those unique circumstances, the court considered the evidence insufficient to warrant termination. In this matter, however, Mother repeatedly tested positive for illicit drugs during the pendency of the CPS investigation and did not test negative until seven months before her trial date. We therefore consider this case to be analogous not to *Wetzel*, but to *In re A.M.M.,* No. 04-20-00511-CV, 2021 WL 1394308 (Tex. App.—San Antonio Apr. 14, 2021, no pet.) (mem op.). In that case, the court affirmed the termination decision on the basis

13

of evidence establishing that the mother had a long history of alcohol and drug abuse, as well as numerous presumptively positive tests. *Id*. at *4-5.

Mother's contention that the evidence is insufficient to show endangerment because of the alleged lack of evidence causally connecting that behavior with conduct endangering a child misstates the law; endangering conduct, including drug abuse, need not be directed at the children in question, nor need the children sustain any injury, for the evidence to warrant the conclusion that the children have been endangered, as that term is used in the context of a parental rights termination. *In re J.F.-G.*, 627 S.W.3d at 312 (citing *Boyd*, 727 S.W.2d at 533). Mother's reliance on *In re L.C.L.* likely is misplaced, because even though the Texas Supreme Court denied the petition for review, Justice Lehrmann's concurrence implies that if presented with a "proper case," the court probably would decide that no causal nexus between the drug use and the alleged endangerment would be necessary to find clear and convincing evidence of endangerment. 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet denied; 629 S.W.3d 909 (Tex. 2021).

Mother has correctly noted that *In re A.H.*, stands for the proposition that conclusory testimony does not "amount[] to more than a scintilla of evidence[,]" and therefore is insufficient to support a termination decision. 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.). Mother also is correct in her observation that some of the witness testimony in this case was conclusory. The rationale of *In re*

*A.H.* does not, however, justify a reversal of the trial court's decision in the case at bar, because the evidence in each case is appreciably different. In *In re A.H.*, the only evidence of the best interest element of the case consisted of the caseworker's testimony that "termination of all parental rights was in the children's best interest 'because the children need a loving family that will care for them and take care of their needs[.]'" *Id*. In the instant case, conversely, the record contains ample evidence that Mother used marijuana on an ongoing basis both before her children's removal from her care and during the time that the Department was investigating the situation and working to reunite the family. Mother admitted to her marijuana use, and it is difficult to imagine evidence more clear and convincing than that admission.

Because the evidence of Mother's ongoing marijuana use constitutes clear and convincing evidence of both condition endangerment and conduct endangerment, we will uphold the trial court's findings as to sections (D) and (E) of § 161.001(b)(1). We overrule Mother's first and second issues.

### 1. Best Interest of the Children

In her last issue, Mother challenges the legal and factual sufficiency of the evidence to support the factfinder's determination that terminating her parental rights was in the children's best interest. Specifically, Mother argues the evidence is legally and factually insufficient to demonstrate by clear and convincing evidence that termination of her parental rights is in the best interest of the children because

the record is either silent as to the factors set forth in *Holley v. Adams*, or because the evidence on these factors favors Mother. 544 S.W.2d 367 (Tex. 1976).

As Mother has argued, there is a strong presumption that the best interest of a child is served by keeping the child with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.,* 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. Fam. Code Ann. § 153.131(b). However, prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a). The trial court is given "wide latitude in determining the best interests of a minor child." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (citing *Leithold v. Plass*, 413 S.W.2d 698 (Tex. 1967)).

The Family Code outlines nonexclusive factors to be considered in determining whether a parent is willing and able to provide a safe environment for a child including: the child's age and physical and mental vulnerabilities; whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate

16

parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities; and whether an adequate social support system consisting of an extended family and friends is available to the child. Tex. Fam. Code Ann. § 263.307(b); *see also In re R.R.,* 209 S.W.3d at 116. The Texas Supreme Court has articulated several additional factors that may be considered when determining whether termination of parental rights is in the best interest of the child, including: the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371-72 (setting forth the "*Holley* factors" and noting "[t]his listing is by no means exhaustive[ ]"). No specific *Holley* factor is controlling, and evidence of one factor may be enough to support a finding that termination is in the child's best interest. *See M.C. v. Tex. Dep't of Family & Protective Servs.*, 300 S.W.3d 305, 311 (Tex. App.—El Paso 2009, pet. denied) ("Undisputed evidence of just one factor may be sufficient to support a finding that

termination is in the best interest of a child."). Because stability and permanence are important in a child's emotional and physical development, termination of parental rights may be in the child's best interest when a parent is unable to provide a stable environment or a reliable source for food, clothing, shelter, and emotional support. *See In re J.D.*, 436 S.W.3d 105, 119-20 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re T.G.R.-M.,* 404 S.W.3d 7, 17 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A parent's past conduct is relevant to determining the parent's present and future ability to care for a child. *See In re C.H.*, 89 S.W.3d at 28 (parent's past performance as parent is relevant to determination of present and future ability to provide for child); *In re E.D.,* 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) (factfinder may measure a parent's future conduct by past conduct). The best-interest determination may rely on direct or circumstantial evidence, subjective factors, and the totality of the evidence. *In re N.R.T.,* 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). If, in light of the entire record, no reasonable factfinder could form a firm belief or conviction that termination was in the child's best interest, then we must conclude that the evidence is legally insufficient to support termination. *See In re J.F.C.,* 96 S.W.3d at 266.

As for the children's wishes, Mother's brief contains only the bare, unsupported assertion that the children "want to be with their mother." Other evidence indicated that the children were doing well in their respective placements.

18

Also, because Casey and Mary were only four years old and twenty months old, respectively, at the time of trial, there was no evidence presented as to the children's subjective desires. This factor does not weigh heavily in favor of or against terminating parental rights.

Regarding the children's emotional and physical needs now and in the future, and the possible emotional and physical danger to them now and in the future, the record includes reports that the children were removed because of Mother's drug use and her inadequate supervision of the children. Even if we were to accept Mother's assertion that despite evidence to the contrary, she did not use either methamphetamine or cocaine, we are left with Mother's acknowledgement of marijuana use during the pendency of this case. This evidence supports the trial court's conclusion on the best interest element of the case.

As to Mother's parental abilities, the evidence showed that Mother has been diagnosed with depression and anxiety, and that she has not appropriately used her prescribed medication to manage these diagnoses. Not only has she sometimes taken too much of her medication, as M.A. testified, Mother's own words reveal that she sometimes did not take her medication as directed. Although some of the evidence in the record indicates that Mother's mental health symptoms were treatable, this evidence does not show, as in *Wetzel*, that Mother's illness had been successfully treated, rendering it appropriate to relegate it to the realm of ancient history. Given

the ongoing nature of Mother's mental health issues and the lack of any indication that these issues can be prevented from recurring, the trial court correctly determined that Mother's mental illness adversely affected Mother's parenting abilities and prevented her from properly providing for her children's physical, emotional, and mental needs. Because of Mother's substantially diminished parenting abilities, the children's best interest is served by terminating Mother's parental relationship with them.

Further addressing Mother's parenting abilities, we observe that Mother's service plan required her to complete a twelve-week parenting class. Her failure to complete her initial class may be excused by the teacher's decision to discontinue the class. Her failure to complete her second class, on the other hand, cannot be excused by Mother's disagreement with the teacher's instruction methods. In fact, Mother's decision to stop attending this second parenting class indicates that she was not even "checking [the] boxes[,]" to try to show compliance with her service plan.

Mother's failure to present evidence of her AA/NA attendance further underscores the impression that she was not complying with her service plan. In *In re D.R.A.*, as in this case, the evidence indicated that the parent did not have an AA sponsor, and that the Department was unable to confirm the parent's AA attendance. 374 S.W.3d at 535. The court stated that such evidence did "not weigh in [the parent's] favor[,]" and affirmed the trial court's termination of parental rights. *Id*. In

*In re N.A.*, the mother presented no evidence that she was "attending her services," and provided apparently falsified evidence of her AA attendance. Nos. 02-13-00345-CV, 02-13-00346-CV, 2014 Tex. App. LEXIS 2377, at *28-29 (Tex. App.— Fort Worth 2014, no pet.) (mem op.). Although the *In re N.A.* court did not discuss the legal ramifications of this evidence, the court affirmed the trial court's decision to terminate the mother's parental rights, thus indicating that it took a dim view of the mother's failure to provide any confirmation that she was complying with her service plan. *Id.* at 63. Here, as in *In re N.A.*, Mother has failed to document compliance with her plan of service, and we share the *In re N.A.* court's apparent perspective on this type of omission.

Another *Holley* factor particularly applicable to this case is the current and future physical and emotional danger to the children. 544 S.W.2d 367 at 372. Mother's ill-advised decision to take the children in late December of 2020, and her admitted evasive driving maneuvers during that event, placed the children in physical danger. There is no indication that Mother would not repeat her actions if she were permitted to retain her parental status, and the physical danger posed by the improper operation of a motor vehicle cannot be overstated. *See e.g.*, *In re J.F.-G.*, 627 S.W.3d at 308. Although Mother has offered an excuse for her driving, and although *Holley* requires that this excuse be considered, the trial court apparently did not consider that excuse persuasive, and we agree with that assessment of it. In

response to a question asking why Mother was "speeding away down the highway when [she] saw [M.A.][,]" Mother testified that M.A. was "trying to pull me over to get [the children] back[.]" Although Mother's view of M.A.'s motives is accurate, as shown by M.A.'s testimony, it does not excuse the arguably reckless driving that put Casey, Mary, and others at risk of being injured in a collision.

The combination of Mother's drug use, her ongoing mental health challenges, and her decision to drive dangerously while absconding with Casey and Mary, support the proposition that it is in the children's best interest to terminate Mother's parental rights, lest Mother's continued poor decisions place the children in further danger. We have weighed the evidence relevant to the best interest component of the case, and we conclude that the trial court did not err in determining that the children's best interest would be served by terminating Mother's parental rights. We overrule Mother's last issue.

## IV. Conclusion

Given our conclusion that the evidence supports the trial court's findings made pursuant to Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E), and the trial court's best-interest finding, we need not address Mother's additional contention that the evidence was insufficient to support the finding that her mental illness had prevented and would continue to prevent her from adequately caring for her children

22

until the children reach adulthood. See Tex. Fam. Code Ann. § 161.003; Tex. R. App. P. 47.1.

For this reason, the Order of Termination in trial court cause number F-238,543 is

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on March 29, 2022
Opinion Delivered May 12, 2022

Before Golemon, C.J., Kreger and Johnson, JJ.